SUSANNE H. STERN, PLAINTIFF-RESPONDENT, v.
MILTON H. STERN, DEFENDANT-APPELLANT.

Argued October 21, 1974—Decided January 23, 1975.

*Mr. Monroe Ackerman* argued the cause for appellant (*Messrs. Rudd and Ackerman,* attorneys; *Mr. Neil Braun,* on the brief).

*Mr. Everett M. Scherer* argued the cause for respondent (*Messrs. Riker, Danzig, Scherer and Brown,* attorneys; *Mr. Scherer,* of counsel; *Mr. Thomas C. C. Humick,* on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J.  ▮  In this matrimonial action plaintiff, Susanne H. Stern, was granted a divorce on the ground of adultery from her husband, the defendant, Milton H. Stern. The court likewise awarded the plaintiff alimony and child support and effected an equitable distribution of property pursuant to *N. J. S. A.* 2A:34–23. 123 *N. J. Super.* 566 (Ch. Div. 1973).[1] The Appellate Division affirmed. 128 *N. J. Super.* 198 (1974). We granted certification at the instance of the defendant. 65 *N. J.* 568 (1974).

There is no challenge to the grant of a divorce. Defendant does, however, contend that the amounts of alimony and

---

[1] In the Chancery Division the cause is entitled *S. C. v. A. C.* While we continue to believe that the use of initials in order to disguise the true identity of litigants serves a legitimate end where the interests of minor children are concerned, as well as upon other miscellaneous but rare occasions, we do not approve a resort to this practice where the effort is to throw the protective cloak of anonymity over a successful and well-known member of the bar, as would appear to have been the case here.

child support are excessive and that the trial judge acted improperly in the manner in which he identified and thereafter allocated marital assets between the spouses.

We perceive no error either in the amount of alimony or of child support. In respect to each of these awards the determination of the court below finds ample support in the record. The nature of the property that the trial court was called upon to examine in effecting distribution, and the manner in which the allocation of these assets was made, do present issues which this Court has not heretofore considered.

Defendant was ordered to pay to the plaintiff $36,000 annually as alimony and $4,000 a year as support of a minor child. Additionally, by way of distribution of marital property, he was directed to pay the plaintiff $100,000 in forty equal consecutive quarterly installments.[2]

Defendant is a partner in a very successful, well-known and highly respected law firm. As an attorney his personal earning capacity is thoroughly proven. He concedes that his partnership interest is an asset eligible for distribution pursuant to *N. J. S. A.* 2A:34–23. He objects, however — chiefly upon two particular grounds — to the property distribution made by the trial judge. First, he disputes the inclusion and method of valuation of certain assets in determining partnership worth; secondly, he contests the propriety of considering his earning capacity as being a separately identified and distinct item of property, and as such eligible for apportionment under the statute.

We first consider the latter objection. In undertaking the statutory allocation of marital assets, the trial judge included, apparently as a separate item of property, defendant's earning capacity. The opinion states,

---

[2]Plaintiff, by agreement of the parties, was to become sole owner of the marital dwelling and its contents, but defendant was to receive compensation from the plaintiff for one-half its value of $52,400. This payment of $26,200, from plaintiff to defendant, to be made over a ten-year period, will result in reducing defendant's annual payments to plaintiff to the sum of $7,380.

His ability [earning capacity] is an amorphous asset of this marriage in the absence of other assets. It consists of natural ability, undergraduate and postgraduate education, marriage to the daughter of a man of high standing and lucrative income in the area of his professional activity, entree' to his office and ultimate partnership, subsequent management of the firm, with advancement in the esteem of his professional peers. [123 *N. J. Super.* at 568]

We agree with defendant's contention that a person's earning capacity, even where its development has been aided and enhanced by the other spouse, as is here the case, should not be recognized as a separate, particular item of property within the meaning of *N. J. S. A.* 2A:34–23.[3] Potential earning capacity is doubtless a factor to be considered by a trial judge in determining what distribution will be "equitable" and it is even more obviously relevant upon the issue of alimony. But it should not be deemed property as such within the meaning of the statute.

As we have indicated, defendant readily concedes that his partnership interest is an asset that has been acquired during marriage and that it qualifies and is eligible for equitable distribution. He disputes, however, the manner in which this property interest has been valued and objects to the size of the share allocated to the plaintiff.

Placing a precise or even an approximately accurate value upon an interest in a professional partnership, when the partner whose interest is in question intends to continue as a member of the firm is no easy matter. Circumstances preclude our customary resort to market value. Some other method of determining worth must be employed. Here the terms of the partnership agreement are of help. There appear in this document four quite distinct payment plans ap-

[3]In at least one community property state, a court has rejected the notion that a college and law school education, though financed in part by the other spouse, may be considered a separate community asset. *Todd v. Todd,* 272 *Cal. App.* 2d 786, 78 *Cal. Rptr.* 131 (Ct. of App. 1969). But see Comment, *The Interest of the Community in a Professional Education,* 10 *Cal. West. L. Rev.* 590 (1974).

plicable with respect to a partner who withdraws from the firm, becomes disabled, dies or retires. Of these, probably the most accurate and certainly the most useful for present purposes is the formula for the calculation and payment of a partner's interest to his personal representative upon death. In such an event, according to the articles of partnership, his estate is to receive the then value of his capital account, readily determinable from the partnership books, together with a fixed sum appearing after the partner's name on a schedule appended to the partnership agreement. This schedule is revised quarterly. It is obviously intended to reflect those elements of partnership worth other than the member's capital account. The testimony reveals that these payments, occasioned by death, are to be funded with the proceeds of life insurance on the lives of the several partners, the policies being owned by and the proceeds payable to the firm. The amount appearing after defendant's name on the schedule attached to the copy of the partership agreement which was received in evidence was $167,500. We think the trial court would be justified in adding to this sum the value of defendant's capital account and treating the total as the *presumptive* value of defendant's partnership interest in the firm. We say *presumptive* value only, because either plaintiff or defendant will be entirely at liberty to challenge the figure so determined as not being reflective of true value.

Generally speaking the monetary worth of this type of professional partnership will consist of the total value of the partners' capital accounts,[4] accounts receivable, the value of work in progress, any appreciation in the true worth of tangible personalty over and above book value, together with good will,[5] should there in fact be any; the total so arrived

---

[4]This partnership keeps its books on a cash basis.

[5]The good will of a law firm, for ethical reasons, may not be sold or transferred for a valuable consideration. *N. J. Advisory Committee on Professional Ethics, Opinion 48*, 87 *N. J. L. J.* 459 (1964); Opinion 80, 88 *N. J. L. J.* 460 (1965). It may, however, in a given

at to be diminished by the amount of accounts payable as well as any other liabilities not reflected on the partnership books. Once it is established that the books of the firm are well kept and that the value of partners' interests are in fact periodically and carefully reviewed, then the presumption to which we have referred should be subject to effective attack only upon the submission of clear and convincing proofs.[6]

■ Defendant offers a number of objections to the consideration of partnership accounts receivable in connection with the proposed equitable distribution. Most of his argument rests upon the mistaken assumption that the court is directing the apportionment of the accounts themselves. This is not the case. The accounts receivable are not the subject matter of any proposed distribution; they are being examined and valued simply as one element to be included in determining the entire worth of defendant's partnership interest. It is the latter asset that is being allocated between the parties.

■ The further contention is made that if accounts receivable are to be considered at all, then their value should be diminished by the estimated amount of federal income tax that defendant will be required to pay in respect of these accounts, or some part thereof, as they reach him in the form of later partnership distributions. This argument also misconceives the purpose for which the accounts receivable are

case, be possible to prove that it does exist and is a real element of economic worth. Concededly, determining its value presents difficulties. *Rev. Rul.* 609, 1968–2 *Cum. Bull.* 327.

[6]Generally, a requirement that a presumption may only be rebutted by a degree of proof stronger than that usually required upon a civil issue, should be supported by some policy consideration. *In re Weeks*, 29 *N. J. Super.* 533, 538 (App. Div. 1954). Here we are moved to express the rule in these terms in an effort to simplify as much as possible the submission of proofs in matrimonial actions involving the issue of property distribution. We are also mindful of the inherent likelihood that such figures, derived from the firm's books and agreement of partnership, will be substantially accurate.

being considered — to fix a total value of defendant's partnership interest. The value of the latter asset is in no way diminished by the fact that defendant may thereafter be called upon to pay an income tax resulting in substantial part from his receipt of income from the partnership. The fact that he will pay a tax on these receipts may be a relevant consideration when considering whether a distribution is equitable and it is clearly relevant with respect to the determination of alimony, but it does not affect the value of defendant's interest in the law firm.

Finally, it is urged that the accounts receivable should be excluded from consideration because they are not a property interest that has "vested" in the defendant. What we have already said would seem an adequate answer to this argument. We take the opportunity, however, to suggest that the concept of vesting should probably find no significant place in the developing law of equitable distribution. The notion of a vested interest came into being in a feudal society and was intimately associated with the medieval concept of seisin. *Holdsworth, An Historical Introduction to the Land Law,* (1927) 68; *Jenks, A Short History of English Law,* (4th ed. 1928) 84–5. It has played an important part in the development of the law of future interests, and early assumed a crucial role in the portion of that law dealing with the rule against perpetuities. On the other hand and in a quite different context the phrase, "vested rights," is occasionally used to denote something to which constitutional guaranties may apply. 1 *Simes and Smith, The Law of Future Interests* (2nd ed. 1956) sec. 136, 116–18; *Rothman v. Rothman,* 65 *N. J.* 219, 225 (1974). These now customary usages of the concept of vesting are clearly in no way relevant to the question of effecting an equitable distribution upon the occasion of a divorce. Our statute requires, in order that property be available for distribution incident to a divorce, that it shall have been *acquired* during marriage. There is no reference to vesting. With only this brief word upon the subject, which is not really before us, we leave for another day any

further discussion of the important and possibly difficult question as to what future interests may qualify as "property" within the meaning of *N. J. S. A.* 2A:34-23.

Subject to what immediately follows, those portions of the judgment below that pertain to the award of alimony and child support are affirmed; those portions pertaining to the distribution of marital assets are vacated and set aside and the case is remanded for further proceedings consistent with this opinion and with the opinions of this Court in *Chalmers· v. Chalmers,* 65 *N. J.* 186 (1974); *Painter v. Painter,* 65 *N. J.* 196 (1974) and *Rothman v. Rothman, supra,* 65 *N. J.* 219 (1974), all of which were decided subsequent to the entry of the judgment from which this appeal was taken and which in some respects announced rules contrary to those followed by the trial judge in this case.[7] The amount of alimony may be reviewed should the trial judge, on remand, conclude that his then disposition of the issue of equitable distribution requires some change in this award.

*For affirmance in part and reversal and remandment in part*—Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*Opposed*—None.

---

[7] For instance, before the trial court, certain gifts received during marriage were excluded as being ineligible for equitable allocation. This Court adopted a contrary view in *Painter v. Painter, supra,* 65 *N. J.* at 214.