583 P.2d 1343

**In re the MARRIAGE OF Marvin R. GOLDSTEIN, Appellant,**

**and**

**Jacqueline Goldstein, Appellee.**

**No. 13595.**

Supreme Court of Arizona,
In Division.

Sept. 11, 1978.

James Hamilton Kemper, Derickson, Kemper & Henze, Phoenix, for appellant.

Robert A. Jensen, P. C., and Murphy, Posner & Froimson by K. Bellamy Brown, Phoenix, for appellee.

GORDON, Justice:

On November 9, 1976, a decree was entered by the Superior Court dissolving the marriage of the parties to this action. Appellant Marvin R. Goldstein, M.D., filed a timely notice of appeal challenging the trial court's valuation of certain assets of the wholly owned professional corporation which was awarded to him in the decree. We have taken jurisdiction in this appeal pursuant to rule 47(e), Rules of the Supreme Court, 17A A.R.S.

The parties were married in 1962 while appellant was in medical school. Appellant now specializes in the treatment of cardiovascular disease and incorporated his private practice in 1973 under the name of Marvin R. Goldstein, M.D., Ltd. In evaluating the worth of this corporation, the trial court did not deduct overhead expense from the amounts in the corporation's accounts receivable and its checking account. Additionally, these assets, together with the pension and profit sharing plans, were not reduced by the amount of tax liability which Dr. Goldstein may eventually incur. Although appellant initially questioned the valuation of the stockholder's equity in the medical practice he specifically abandoned that issue in the briefs, because,

"Marvin Goldstein is going to own the medical practice until some unknown time in the future, there is no evidence to the contrary, and any discounting of stockholders' equity for tax impact would therefore be totally speculative."

We agree with the trial court's treatment of the corporate assets.

■ Citing *McClennen v. McClennen*, 11 Ariz.App. 395, 464 P.2d 982 (1970), appellant contends that the court initially erred by including the accounts receivable in its equitable division of property. In *McClennen*, the Court of Appeals noted in dictum:

"We do not believe * * * it would have been proper * * * for the trial court to divide [the accounts receivable] between spouses. This is so because a lawyer's accounts receivable represents what he lives on from month to month. It is his source of income and the source of the alimony and child support payments ordered by the trial court." *Id.* at 397, 464 P.2d at 984.

Certainly a court should not strip a person of his means of livelihood so that he could not meet his court-ordered obligations. However, this does not mean that the value of an asset, such as the accounts receivable, should not be included in the worth of the corporation awarded to Dr. Goldstein in order to equitably divide all of the property belonging to the parties. Appellant does not dispute the fact that the accounts receivable represents a valuable asset which arose from his efforts during the marriage. As such, the trial court properly included the accounts receivable as an asset on appellant's side of the ledger in apportioning the property. *See Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975); *Riegler v. Riegler*, 243 Ark. 113, 419 S.W.2d 311 (1967).

■ Next, appellant contends that the trial court erred by not reducing the accounts receivable and the corporation's checking account by 36.9 percent, the overhead figure for the corporation. Since the trial court must establish a *present* value for each asset in order to make an equitable distribution, it properly is not concerned with possible future debts which may or may not come into existence. *See In Re Marriage of Fonstein*, 17 Cal.3d 738, 131 Cal.Rptr. 873, 552 P.2d 1169 (1976). Although appellant may choose to utilize the cash in the checking account and the income from the accounts receivable to pay future overhead expenses in order to generate new accounts, for dissolution purposes such future overhead bears no relationship to the cash and accounts already in existence. The overhead incurred in generating the balance currently in the checking account and accounts receivable has either been paid, thereby reducing the checking

account, or is present in the form of an incurred debt. In either case, the past overhead which generated these assets would be reflected in the present value of the corporation. To then subtract future overhead expenses would amount, in essence, to a double deduction from the same assets. Therefore, the trial court correctly did not deduct an overhead allowance from either the corporate checking account or the accounts receivable.

■■ We also reject appellant's contention that the corporation's checking account, accounts receivable, and the pension and profit sharing plans should have been valued in light of his fifty percent tax bracket. This is is not a case where the publication of the dissolution decree causes immediate taxable consequences. Rather, these assets may or may not eventually filter down into appellant's personal coffers sometime in the future. Whether they do and thus at which level he will then be are all factors largely within the accountant's control. Only then would appellant encounter any tax consequences.

> "[W]e first observe that the tax obligations which [appellant] contends should be charged against the community property of this marriage will be incurred, if at all only after dissolution of the marriage and division of the community property. At that time, [appellant's] interest * * * will be his separate property. * * * The amount of taxes which appellant will incur * * * will depend upon a number of variables, the variety of which makes impossible anything more than a speculative approximation of the potential tax liability. Since these variables are largely subject to [appellant's] control, it is appropriate to allocate to him the potential liability." *In Re Marriage of Fonstein*, 131 Cal.Rptr. at 880–881, 552 P.2d at 1176–1177.

In short, "[r]egardless of the certainty that tax liability will be incurred if in the future an asset is sold, liquidated or otherwise reduced to cash, the trial court is not required to speculate on or consider such tax consequences in the absence of proof that a taxable event has occurred during the marriage or will occur in connection with the division of the community property." *Id.* at 880, 552 P.2d at 1176, n.5; accord *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975); *Wahl v. Wahl*, 39 Wis.2d 510, 159 N.W.2d 651 (1968); *Burkhart v. Burkhart*, 349 N.E.2d 707 (Ind.App.1976).

To summarize, appellant in this case claims that certain corporate assets which the trial court awarded to him as separate property were overvalued by the amount of future expenses. We reject his claim, because the expenses were not occasioned by the division of property in the decree of dissolution. The overhead expense represents a future contingent cost which will arise from appellant's post-dissolution use of his separate property, the professional corporation. Similarly, an allowance for appellant's tax bracket would have been improper in this case, because no immediate taxable consequences occurred in connection with the division of the property. Consequently, it would have been incorrect to diminish the value of the community by deducting appellant's separate future expenses.

The judgment of the Superior Court is affirmed.

STRUCKMEYER, V. C. J., and HOLOHAN, J., concurring.