**Pamela I. CROOKER**

v.

**Larry G. CROOKER.**

Supreme Judicial Court of Maine.

Argued May 4, 1981.

Decided Aug. 7, 1981.

Berman, Simmons, Laskoff & Goldberg, P.A., Robert A. Laskoff (orally), William D. Robitzek, Lewiston, for plaintiff.

Fitzgerald, Donovan, Conley & Day, Duane D. Fitzgerald, Constance P. O'Neil, (orally), Bath, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

GODFREY, Justice.

Defendant Larry G. Crooker appeals from a judgment of the Superior Court which granted Pamela I. Crooker, his wife, a divorce and which divided the parties' marital property. Mr. Crooker challenges that judgment on two grounds: first, that the presiding justice employed an erroneous mathematical computation when he appraised the fair market value of the Taste of Maine Restaurant, part of the couple's marital property; and, second, that the presiding justice failed to consider the potential expenses and tax liability associated with selling the restaurant when he estimated its fair market value. Mrs. Crooker also filed a notice of appeal from the judgment. We affirm the judgment below.

On March 14, 1979, Pamela Crooker filed in Superior Court a complaint for divorce from her husband, Larry Crooker. The matter came to trial on May 27, 1980, the most important issue being the valuation and division of the parties' property.

Of the parties' marital property, the most valuable asset was a restaurant known as

the "Taste of Maine." During the trial Ralph Precopio, a real estate appraiser testifying for Mrs. Crooker, valued the restaurant and surrounding land at about $454,000. Wallace Sterling, a real estate appraiser testifying for Mr. Crooker, estimated that the property was worth no more than $321,420 and was more probably worth only $283,300.

The presiding justice rendered his divorce decree in the case on June 20, 1980. When he addressed the issue of appraising the restaurant, he correctly observed that Mr. Precopio had valued the property at $454,000 but mistakenly cited Mr. Sterling as valuing the property at $390,800. On the basis of his memory of the experts' testimony the justice found that the restaurant had a fair market value of $422,400. After subtracting from that figure the value of a mortgage and certain operating expenses, the justice concluded that the restaurant had a net value of $357,000.

Because the parties had contributed equally to the development of the restaurant, the presiding justice divided the value of the restaurant equally between the parties. The justice awarded Mr. Crooker the restaurant itself and set aside to Mrs. Crooker the sum of $178,700. In addition, the justice granted Mrs. Crooker a lien and execution on the restaurant to secure payment of her monetary award. Mrs. Crooker's award was expressly stated to be "in lieu of alimony."

Five days after the judgment of divorce was entered in the docket Mr. Crooker moved to amend the judgment pursuant to M.R.Civ.P. 59(e). In that motion Mr. Crooker alerted the justice to his mistake concerning Wallace Sterling's testimony and further suggested that the justice had failed to subtract from the restaurant's fair market value the amount of an additional mortgage and a potential broker's fee that could be incurred if the restaurant were sold. Finally, Mr. Crooker moved the court to allow him to sell the restaurant and to pay his former wife one-half of the sale price, minus her share of the selling expenses.

At a hearing on Mr. Crooker's motion to amend the judgment Mr. Crooker presented the testimony of an accountant who described the possible tax consequences resulting from a future sale of the restaurant. Mr. Crooker did not represent that he actually intended to sell the restaurant in order to satisfy the judgment. Although Mrs. Crooker objected to the accountant's testimony on the ground that it was unduly speculative, the presiding justice heard the testimony de bene esse.

The Superior Court granted Mr. Crooker's motion insofar as it sought a reduction of the restaurant's fair market value for the amount of the additional mortgage. After subtracting that mortgage from his earlier estimate of the restaurant's fair market value, the presiding justice found that Mrs. Crooker's monetary award must be reduced to $115,700. With regard to Mr. Crooker's other objections, the justice held:

> The information re tax consequences permitted on a de bene basis is disallowed and disregarded. The court has considered the amount and extent of joint endeavor the parties have put into their businesses and marriage and in spite of any other adjustments and corrections that may be made to the figures herein used, feels that this figure [$115,700] is fair and equitable for division of property and alimony concepts.

### 1.
### The Presiding Justice's Valuation of the Restaurant

Mr. Crooker contends that in the original divorce decree the presiding justice placed a value on the restaurant by simply averaging the two real estate appraisers' estimates. Such a computation did not, in Mr. Crooker's view, represent a judicial decision because the presiding justice evidently made no attempt to assess the reliability of either expert's estimate. Mr. Crooker asserts that, even if such a calculation were permissible, the presiding justice distorted the calculation when he cited Sterling as assigning the restaurant a higher value than he actually had. Because the justice's

supplemental decree appeared to represent merely an adjustment of the fair market value computed in the initial decree, Mr. Crooker contends that the justice's original errors tainted the supplemental decree as well. We disagree.

If we were to conclude that the presiding justice's ultimate valuation of the restaurant resulted from a mere averaging of the two experts' appraisals, Mr. Crooker's objection might have merit. Although in *Merrill Trust Co. v. State*, Me., 417 A.2d 435 (1980), this Court ruled that a judge may adopt a valuation of property that falls between two experts' valuations, that holding rested on the premise that the judge made his own factual findings concerning the evidence on which the experts relied. That decision did not purport to approve a mere averaging of expert appraisals on the assumption that the true value of the property must lie exactly between the highest and lowest estimates. While such a process may create an appearance of "fairness," it tends to debase the judge's role as a finder of facts.

■■■■ We are convinced, however, that the presiding justice's method of determining the fair market value of the restaurant was not as simplistic as Mr. Crooker suggests. Although the justice's initial estimate of the restaurant's fair market value could be construed as being merely the mean between the real estate appraisers' valuations, such a characterization was no longer possible after the justice issued his supplemental decree. Had the justice in fact been seeking to set a mean valuation for the property, he would have revised his calculation of the mean value after he was made aware of his mistake concerning Sterling's appraisal. Although in his second decree the justice did lower his valuation of

the restaurant to account for a mortgage he had not considered before, he did not adjust the valuation so as to reflect Sterling's actual estimate of the property's value. Indeed, the justice stated that in spite of "adjustments and corrections" that could be made concerning his first valuation of the restaurant, he stood by his original estimate as "fair and equitable for division of marital property and alimony concepts." In the circumstances, and in the absence of any request that the presiding justice make specific findings of fact and conclusions of law, we must conclude that the presiding justice reached his valuation of the property through an independent review of the evidence. There being competent evidence in the record to support the justice's appraisal of the restaurant, that appraisal will not be disturbed on appeal.[1]

### 2.

*The Presiding Justice's Refusal to Consider Potential Tax Consequences of Selling the Restaurant*

Mr. Crooker does not contest the presiding justice's decision to award each party half the value of the restaurant. Rather, he asserts that the presiding justice, by failing to consider the expenses and tax liability Mr. Crooker might incur in selling the restaurant, ensured that Mrs. Crooker would in fact receive more than half the value of the property. In Mr. Crooker's view, the proper course would have been for the justice to order a sale of the restaurant and then to award each party half of the proceeds remaining after taxes and all expenses of the sale had been paid. He argues that the justice's failure to do so rendered Mr. Crooker a guarantor, in effect, of the estimated fair market value of the res-

---

1. In the alternative, it would be possible to regard the presiding justice as making not a factual finding concerning the fair market value of the restaurant but rather a discretionary determination concerning Mrs. Crooker's entitlement to a share of the parties' financial resources. Because Mrs. Crooker's award was expressly made "in lieu of alimony," the presiding justice may have been as concerned with assuring Mrs. Crooker some measure of eco-

nomic security as with making a perfectly equal division of the value of the restaurant. Such judicial concern for providing financial support for the spouses is appropriate during the division of marital property. *See* Commissioners' Prefatory Note to Uniform Marriage and Divorce Act, 9A *Uniform Laws Annotated* 93 (Master ed. 1979). On this construction of the presiding justice's ruling, we find no abuse of discretion.

taurant and created the possibility that Mr. Crooker might have to liquidate his non-marital property in order to satisfy Mrs. Crooker's lien. We do not agree with appellant's characterization of the presiding justice's actions.

 The division of marital property is committed to the sound discretion of the divorce court. *Pepin v. Pepin*, Me., 429 A.2d 1005 (1981). Although the presiding justice had the power to order that the restaurant be sold, he was under no obligation to exercise that power. This Court has recognized that liquidation of the marital assets may be in some cases disadvantageous to the parties. *See Zillert v. Zillert*, Me., 395 A.2d 1152, 1157 (1978). In the present case the presiding justice could have reasonably concluded that a forced sale of a viable restaurant business would tend to jeopardize rather than enhance Mr. Crooker's ability to satisfy Mrs. Crooker's monetary award.

Having decided not to order a sale of the restaurant, the presiding justice further determined that the estimated fair market value of the property should not be diminished by the amount of expenses and tax liability that Mr. Crooker might incur if he personally elected to sell the restaurant. We find no error in that determination. Mr. Crooker never represented to the Superior Court that he actually intended to sell the property in order to pay Mrs. Crooker her share of the marital property. Thus, he sought a reduction in the fair market value of the restaurant for liabilities that might never arise. For the presiding justice to have considered such potential but unrealized liabilities would have been to indulge in speculation. The value of marital assets should be determined as of the time they are distributed without reference to possible future events. *See In re Marriage of Goldstein*, 120 Ariz. 23, 583 P.2d 1343 (1978); *Weinberg v. Weinberg*, 67 Cal.2d 557, 63 Cal.Rptr. 13, 432 P.2d 709 (1967); *Burkhart v. Burkhart*, 169 Ind.App. 588, 349 N.E.2d 707 (1976); *Aaron v. Aaron*, 281 N.W.2d 150 (Minn.1979); *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975); *In re Marriage of*

*Kathrens*, 47 Or.App. 823, 615 P.2d 1079 (1980); *Wahl v. Wahl*, 39 Wis.2d 510, 159 N.W.2d 651 (1968). Of course, the court must consider the tax consequences of distributions it actually orders in its decree. *See, e. g., Wright v. Wright*, 92 Wis.2d 246, 284 N.W.2d 894 (1979). But the court should not adjust its valuation of marital assets to account for the parties' possible dealings with those assets after they are finally distributed.

The entry is:

Judgment affirmed.

All concurring.