In re the Marriage of Hubert **KASTE,** petitioner, Respondent,

v.

Helen **KASTE,** Appellant.

No. C8–83–2027.

Court of Appeals of Minnesota.

Oct. 2, 1984.

Charles A. Adamson, Randall C. Berkland, Mankato, for respondent.

Richard J. Krambeer, Eagan, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

The trial court made original findings and judgment in this dissolution action granting wife of 23 years long-term maintenance and equitable division of marital property. On husband's motion, the court deleted its original findings, decreased amount of maintenance, limited maintenance period to four years, and disproportionately decreased her share of marital assets. We reverse and remand.

## FACTS

Hubert and Helen Kaste were married June 21, 1961. They have one child, age 18, who resides with the husband, who is supporting him while he attends college.

The husband, age 50, is presently Director of the Southern Minnesota Office of Lutheran Social Services in Mankato and holds Masters degrees in theology and social work. He has numerous fringe benefits, including group health insurance, and his gross pay is $2,150 per month. His net after taxes and social security is approximately $1,650. He receives $400 per month from part-time employment with a

local church, and $250 a month rental of the parties' lake cabin.

The wife, age 48, started working part time for a Mankato company as a proof reader in 1980, after an absence of nearly 20 years from the job market. She is only able to obtain 20 hours work per week on average at this job which nets her $290 per month. During the more than 21 years of the parties' marriage, she served primarily as a "pastor's wife," supporting her husband's work. Her estimated expenses are $1,000 per month. She has made many attempts to obtain more lucrative employment in the Mankato area without success.

The wife completed two years of college before marriage. Early in the marriage, while her husband attended school, she worked as a secretary and a substitute teacher. Arthritis now prevents her from pursuing work such as typing. The wife testified she would probably need to attend college for three years to obtain a degree. However, she was not certain whether she would return to school or continue her employment.

The parties enjoyed a comfortable standard of living during their marriage and acquired about $180,000 in assets.

The trial court initially awarded the wife $300 per month in spousal maintenance through September, 1998, when she reached age 62, or to terminate earlier upon her remarriage or upon the death of either party. The husband was ordered to pay all remaining mortgage payments on the homestead of $333 per month, with the unpaid balance of $28,000. This award was based on the court's findings that:

It is highly probabl[e] that Respondent would successfully complete a course of education or training, but it is not certain as to whether this would enable her to become fully self-supporting thereafter. * * * Due to Respondent's extended absence from the employment market after the birth of the parties' child, any education or work experience or skills previously acquired have become outmoded. This lengthy absence * * * has also permanently diminished her earning capacity. * * * Respondent lacks sufficient property, absent liquidating all of her property and assets, to provide for her needs, especially during any period of training or education, and Respondent is unable to adequately support herself through appropriate employment, after considering all relevant circumstances, including those set forth hereinabove; and an equal distribution of marital property without additional support or maintenance would be unfair in view of the earning capacity of the parties at the present time.

Following the husband's motion to amend the findings and decree the trial court substantially amended the findings by deleting several findings set forth above, increasing spousal maintenance to $400 per month, while decreasing its term from 15 to 4 years, and eliminated the husband's responsiblity for the mortgage payments on the homestead.

The trial court initially distributed the parties marital assets so that the wife received approximately $77,000 in assets, including the value of the homestead after the husband completes making the $28,000 balance of the mortgage payments. The husband received approximately $114,000 in assets.

INITIAL DIVISION OF MARITAL PROPERTY

| WIFE | | HUSBAND | |
|---|---|---|---|
| Homestead | $74,000 [1] | Lake Cabin | $55,000 |
| '79 Volkswagen | 3,300 | '77 Chevrolet | 1,000 |
| | | Insurance (cash value) | 6,000 |
| | | Annuity | 7,500 |
| | | Annuity | 1,000 |
| | | Savings | 1,500 |
| | | Pension | 41,950 |
| TOTALS | $77,300 | | $113,950 |

With the amended judgment the trial court revised the property division so that the wife received approximately $63,500 in

1. This includes $46,000 in equity, together with court ordered payments by husband of the $28,-000 balance on the mortgage.

marital assets, while the husband was awarded approximately $100,000 in marital assets.

AMENDED DIVISION OF MARITAL PROPERTY

| WIFE | | HUSBAND | |
|---|---|---|---|
| Homestead | $46,000 | Lake Cabin ($55,000 | |
| '77 Chevrolet | 1,000 | less $16,500 to | |
| Lake cabin set- | | wife) | $38,500 |
| tlement | 16,500 | '79 Volkswagen | 3,300 |
| | | Insurance | 6,000 |
| | | Annuities | 8,500 |
| | | Savings | 1,500 |
| | | Pension | 41,950 |
| TOTALS | $63,500 | | $99,750 |

In revised decree, wife was given the responsibility of paying off the $28,000 balance of the mortgage. The apparent offset is that the husband gets full title to the lake cabin, rather than a tenancy in common until the mortgage is paid, but he must pay the wife $16,500 within 90 days of entry of judgment.

The wife appeals this revision of the property division and spousal maintenance award.

## ISSUES

1. Did the trial court abuse its discretion in amending the original disposition of the property of the parties?

2. Did the trial court abuse its discretion in amending the original award of spousal maintenance to the wife?

## ANALYSIS

*Standard of Review:*

In *Servin v. Servin,* 345 N.W.2d 754 (Minn.1984), the Minnesota Supreme Court said:

A trial court has broad discretion in dividing marital property upon dissolution of a marriage. Its decision will be overturned only for a clear abuse of discretion. This court on review must affirm the trial court's division of property if it had an acceptable basis in fact and principle even though this court may have taken a different approach.

*Id.* at 758 (cited in *Wilson v. Wilson,* 348 N.W.2d 357, 359 (Minn.App.1984)).

1. The wife argues that the trial court erred in including her non-marital interest when making the property division. The parties stipulated that the wife received over $25,000 in non-marital property, as inheritances, during the course of the marriage and that she should receive the parties' money market and mutual fund accounts, valued at $17,000 as settlement of this claim.

Minn.Stat. § 518.58 (1982) states, in part:

If the court finds that either spouse's resources or property, including his portion of the marital property as defined in section 518.54, subdivision 5 are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the property otherwise excluded under section 518.54, subdivision 5, clauses (a) to (d) to prevent the unfair hardship * * *.

The trial court made no finding that the husband's resources or property were so inadequate as to work an unfair hardship, and the evidence does not support such a finding.

Minn.Stat. § 518.58 (1982) governs the division of marital property. This statute states:

Upon a dissolution of a marriage, * * * the court shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property. The court shall base its findings on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contribution of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker. It shall conclusively be presumed that each spouse made a sub-

stantial contribution to the acquisition of income and property while they were living together as husband and wife * * *.

The parties' *marital* property is valued at $163,250. An equal division would yield property valued at $81,625 for each. However, the court awarded the wife only $63,500 in marital property and the husband $99,750 in marital property.

■ As recently noted by the Minnesota Supreme Court, *"equal division of the wealth accumulated through the joint efforts of the parties is appropriate on dissolution of a long term marriage."* *Miller v. Miller,* 352 N.W.2d 738, 742 (Minn. 1984) (citing *Arundel v. Arundel,* 281 N.W.2d 663 (Minn.1979)) (emphasis added).

The husband asked for an amended finding that the cars be switched; the wife agreed provided she was paid the difference in value. The court switched the award of cars but gave the wife no offset. The wife lost $2,300 on this revision.

Under the revised decree, the wife's *liquid* marital ($16,500) and non-marital ($17,000) assets total $33,500. Non-liquid assets (house equity & car) total $47,000. Since her expenses of approximately $1,000 per month are not fully covered by her $290 net income and $400 temporary maintenance award, she will reduce her liquid assets approximately $3,600 per year until maintenance expires in September 1987. After that her assets will decline even faster if she continues her present employment. She has not been able to find better employment and whether a job will be available for her even if she gets a college degree is questionable. If she pursues an education by attending college three years, her living expenses and tuition could completely consume her liquid assets. In addition, she has no fringe benefits, such as group health or life insurance, from her employment and no pension.

The husband presented no evidence that a gross salary of approximately $2,800 per month would be insufficient to meet the expenses of himself and the parties' adult son, in addition to maintenance.

There was no evidence that the husband's current and future needs would not be met if the trial court had ordered an equal division of the marital assets. His financial situation should improve in the future as his son becomes self supporting and as his pension benefits and annuity program continue to increase in value.

■ The trial court findings do not support the court's unequal division of the parties' marital property. Even in the court's revised finding regarding the wife's future prospects to support herself, the court states: "Respondent lacks sufficient property, absent liquidating all of her property and assets, to provide for her needs, especially during any period of training or education, and Respondent is unable to adequately support herself through appropriate employment, after considering all relevant circumstances, including those set forth hereinabove, and *an equal distribution of marital property without additional support or maintenance would be unfair* in view of the earning capacity of the parties at the present time." (emphasis added.) The trial court finding indicates it intended to at least equally divide the property.

■ The trial court's division of property lacks "an acceptable basis in fact and principle" and therefore constitutes an abuse of discretion. *See, O'Brien v. O'Brien,* 343 N.W.2d 850, 852 (Minn.1984).

2. The wife argues that the trial court abused its discretion when it amended the divorce decree so as to reduce the maintenance awarded her from long-term to temporary maintenance.

The original decree provided payment of $300 in spousal maintenance through September 1998 when the husband reaches age 65, terminating earlier in the event of the wife's remarriage or upon the death of either party. The amended decree provided the wife with $400 per month in maintenance through September 1987 with the same conditions.

Minn.Stat. § 518.552, subd. 2 (1982), sets forth the factors to be considered by the

trial court in setting the amount and duration of maintenance. The trial court obviously considered these factors in its original findings.

 The record does not support the trial court's deletion of its original findings that (1) although it was likely that the wife would successfully complete a course of education or training, it was not certain whether this would enable her to become self-supporting, (2) the wife's work skills have become outmoded, (3) her absence from the job market has permanently diminished her earning capacity, and (4) the husband's income should be sufficient to meet his needs while meeting those of his wife.

Appellant argues that this case is much like *Faus v. Faus*, 319 N.W.2d 408 (Minn. 1982), where the Minnesota Supreme Court noted that permanent maintenance was appropriate given that the wife had been absent from the job market 20 years, had only low level skills and was currently working at a job that paid $495 net per month, half of her monthly expenses.

Permanent support was also awarded by the trial court and affirmed by the Minnesota Supreme Court in *Arundel v. Arundel*, 281 N.W.2d 663 (Minn.1979).

In the present case, as in *Arundel*, the wife has spent most of her married life supporting her husband in his career development and raising a family. As a result, she has foregone vocational or professional training which would make her financially successful enough in the labor market to support her needs.

 Although a trial court has wide discretion in considering the seven factors governing spousal maintenance awards, this court may reverse where there has been an abuse of that discretion. *O'Brien*, 343 N.W.2d at 852. Here, the trial court's initial evaluation of the wife's financial situation fit the facts and supported its award of long-term maintenance. The court's subsequent revision of the findings that the wife would become fully self-supporting in four years is based on the same record and appears to have been made only at the husband's urging in order to justify temporary rather than long-term maintenance. The amended judgment constitutes an abuse of discretion.

## DECISION

The trial court's amended judgment is reversed. This matter is remanded to the trial court to (1) reinstate its original findings with respect to appellant's employability, (2) equitably divide the marital property without regard to appellant's award of non-marital assets, and (3) reinstate the term of maintenance awarded in the original judgment in an amount it considers appropriate, with the provision that the award may be re-evaluated upon the wife's completion of a training or educational program and attainment of employment that renders her self supporting.

Reversed and remanded.