231 N.J. Super. 576 (1988)
555 A.2d 1190
JOSEPH PISCOPO, PLAINTIFF,
v.
NANCY PISCOPO, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided August 24, 1988.
*577 Francis W. Donahue for plaintiff (Skoloff & Wolfe, Livingston, attorneys).
Charles C. Abut for defendant (Lowen & Abut, Fort Lee, attorneys).
STARK, J.S.C.
Plaintiff Joseph and defendant Nancy Piscopo met in 1970, lived together while students at Jones College, Jacksonville, Florida, married in 1973 and focused themselves on one goal  to facilitate Joseph's rise to stardom. Their arrangement required that defendant attend to plaintiff's every personal special need while keeping house, bearing and raising their child and being a sounding board for plaintiff's artistic ideas. It took them ten years to move Mr. Piscopo from penury to celebrity.
In 1985, when this divorce was filed, the major assets subject to equitable distribution were two houses of substantially similar equity, an escrow account resulting from the sale of a very successful land investment and a corporation, J.P. Productions, Inc., that owned all of plaintiff's work product. From its formation, the corporation was owned 51% by plaintiff, 48% by defendant and 1% by plaintiff's father. The only disputed asset of note is celebrity goodwill.
Defendant asserts that it would be unfair and inequitable to deprive her of a share in plaintiff's excess earning capacity which each of them agreed she was so instrumental in *578 his obtaining. The novel question posited by her assertion is whether the logical extension of Dugan v. Dugan, 92 N.J. 423 (1983), and its precursors require a finding that "celebrity goodwill" is a distinct distributable asset.
In the cited case the New Jersey Supreme Court extended the definition of "all property acquired during the marriage" to include an individual-attorney-practitioner's professional "goodwill" as an intangible to which monetary value can be attributed. Id. at 437-438; Painter v. Painter, 65 N.J. 196 (1974). The Court had already determined that a professional practice in the form of a partnership or corporation is a distributable asset. Stern v. Stern, 66 N.J. 340, 346-347 (1975). Dugan simply made clear that the form of ownership will not control the distributable character of either the practice or its goodwill. Dugan, supra, 92 N.J. at 431. Consistent with its holdings in all other aspects of the law, the New Jersey Supreme Court declared that difficulty of determination is no deterrent to valuation where equity demands monetary compensation. Dugan, supra; Stern, supra; Green v. Bittner 85 N.J. 1 (1980); Portee v. Jaffee, 84 N.J. 88 (1980).
The Dugan Court defined goodwill as "essentially reputation that will probably generate future business. It is the probability that old customers will resort to the old place." Dugan, supra, 92 N.J. at 429. Reputation is the cornerstone of this legally protectible interest. Id. at 433. The Supreme Court mandated certain findings as antecedent to a determination that goodwill exists: the practitioner's demonstrated capacity, over a number of years preceding the complaint filing, to earn net income in excess of the average practitioner of similar age, experience, education and expertise, who expends a similar number of work hours at the task in question. Id. at 439.
Plaintiff contends that professional goodwill is distinguishable from celebrity goodwill. He points out that the former has educational and regulatory prerequisites which any person with acumen can attain while the latter requires ineffable *579 talent which can have no "average" against which to measure. Contrary to plaintiff's assertions, neither an education nor a license is per se an asset in New Jersey. Id. at 433; Mahoney v. Mahoney, 91 N.J. 488 (1982). Rather it is the person with particular and uncommon aptitude for some specialized discipline whether law, medicine or entertainment that transforms the average professional or entertainer into one with measurable goodwill. Dugan, supra, 92 N.J. at 433. It is a very small percentage of those who choose professional or entertainment careers who have the talent to generate above-average earnings.
Contrast plaintiff's assertion that celebrity goodwill is not a distinct asset which has monetary value with what his position undoubtedly would be were someone to appropriate his acts or work product without his consent. Most jurisdictions including New Jersey protect the individual's right to exclusive use of these personal attributes during life even if protection is not afforded after death. See generally, Note, "Famous Person's Right of Publicity," 14 Seton Hall L.Rev. 190 (1983); Estate of Elvis Presley, 513 F. Supp. 1339, 1353-1355 (D.N.J. 1981). In modern times, tort law founded in privacy and right of publicity has protected infringement upon "the celebrity's pecuniary interest in commercial exploitation of his identity"  with monetary compensation. Edison v. Edison Polyform & Mfg. Co., 73 N.J. Eq. 136 (Ch. 1907); Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831 (6 Cir.1987); Canessa v. Kislak, Inc. 97 N.J. Super. 327, 351 (Law Div. 1967); Palmer v. Schonhorn Enterprises, Inc., 96 N.J. Super. 72, 79 (Ch.Div. 1967). Goodwill is, and always has been, a component of this interest. Ibid.; Dugan, supra, 92 N.J. at 429, 431. The court cannot countenance the anomaly that would result if one branch of Chancery vigorously protected plaintiff's person and business from another's "unjust enrichment by the theft of [his] goodwill," Ali v. Playgirl, Inc., 447 F. Supp. 723, 729 (S.D.N.Y. 1978), while another branch deprived a spouse from sharing in that *580 very same protectible interest. See generally, Mahoney, supra, 91 N.J. at 503 n. 5.
Plaintiff does not deny that the entertainment business is the ultimate personal service industry which in totality generates billions of dollars as does law and medicine. U.S. Bureau of the Census, Statistical Abstract of the United States (108 ed. 1987) at 746-748. However, plaintiff asserts that his excess earnings are somehow different from, and so much more susceptible to attenuation by illness, politics, reputation and connections, other personal service professions that valuation of goodwill is impossible. Plaintiff's conclusion is skewed by his reliance on only the most speculative prospective facets of the analysis required to arrive at goodwill. The linchpin of goodwill is, however, objective as measured by past earning capacity and the probability not the possibility that it will continue. Dugan, supra, 92 N.J. at 433. The same seven factors relevant to assessment of professional goodwill enunciated in Dugan are equally applicable to determining the existence of celebrity goodwill.[1] Even assuming difficulty, courts have always been prepared to master such a challenge. Dugan, supra, 92 N.J. at 435; Stern, supra, 66 N.J. at 345; Green, supra, 85 N.J. at 15; Portee, supra, 84 N.J. at 96, 97; Giardina v. Bennett, 111 N.J. 412 (1988).
The heightened vulnerability alluded to by plaintiff does not vitiate the distributability of celebrity goodwill, it simply calls for a different formula to arrive at its value. The court-appointed accountant testified that nascent but accepted accounting methodology in the entertainment field accommodates the difference between entertainment and other professions by *581 applying a discount rather than a multiple to excess earnings in order to reach the capitalization factor. Spousal deprivation of what could be the most significant asset of the marriage in this most lucrative of industries is thereby avoided.
The foregoing analysis compels the court to conclude that celebrity goodwill is a distinct asset susceptible of evaluation which is distributable if acquired during the marriage in accordance with the factors outlined in N.J.S.A. 2A:34-23 (1988).
The court is not satisfied that it had sufficient testimony or evidence in this record from managers, agents or accountants to draw conclusions related to either the average earning rate of an entertainer of plaintiff's age and experience, nor as to an appropriate discount rate for a person of plaintiff's level of stardom. The parties shall have 60 days to supplement the record or to accept the figures reached by the court in its oral decision.
NOTES
[1] Valuing Professional Practices and Licenses, (1987) at 223, 236. The court disagrees with the distinction made in the article by Wald and Gabrielson titled, "A Celebrity's Goodwill and Publicity Value," id. at 236, between celebrity status and publicity value, believing the two to be inextricably interrelated. As with plaintiff, remuneration commanded and received for commercials is directly correlated with his celebrity status. Accord Golub v. Golub, 139 Misc.2d 440, 527 N.Y.S.2d 946 (Sup.Ct. 1988).