**Gia M. PRIMA, individually and as beneficiary of the Estate of Louis Prima, Plaintiff,**

v.

**DARDEN RESTAURANTS, INC., d/b/a, Olive Garden Restaurant, and Grey Advertising, Inc., Defendants.**

**No. CIV. 99–1637 GEB.**

United States District Court,
D. New Jersey.

Jan. 12, 2000.

Anthony Sylvester, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for Plaintiff Gia Prima.

Stephen Noah Dermer, Lowenstein Sandler PC, Roseland, NJ, for Defendants Darden Restaurants, Inc., and Grey Advertising, Inc.

## OPINION

BROWN, District Judge.

This matter comes before the Court upon the motion of defendants, Darden Restaurants, Inc., doing business as the Olive Garden Restaurant ("Darden Restaurants"), and Grey Advertising, Inc., ("Grey Advertising"), for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(b). The Court has jurisdiction over this action pur-

suant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1332 and 1338(a), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). For the reasons discussed below, the defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The plaintiff, Gia Prima, is the widow of Louis Prima, and the successor-in-interest to his estate. *See* Plaintiff's Rule 56.1 Statement at ¶ 1; Defendants' Rule 56.1 Statement at ¶ 3; Plaintiff's Complaint at ¶ 4. Mrs. Prima was born in Roebling, New Jersey, and currently resides in New Jersey. *See* Certification of Gia Prima in Opposition to the Motion of Defendants for Judgment on the Pleadings or, Alternatively, for Summary Judgment at ¶ 2 ("Prima Cert."). Mrs. Prima and her late husband were residents of the state of Nevada from 1963 to the time of Louis Prima's death in 1978. *See id.* at ¶¶ 6 and 9.

Louis Prima was born in Louisiana, and left there in the 1930's to pursue his musical career in New York. *See* Prima Cert. at ¶ 4. Over the next five decades, Louis Prima became a Grammy Award winning singer, songwriter and performer, who performed and sold recordings of his music throughout the world. *See* Plaintiff's Complaint at ¶ 5. More recently, and long after his death, Mr. Prima's music has been featured in a critically acclaimed Gap "Khakis Swing" commercial, as well as in the motion pictures "Analyze This", "Casino", "Big Night", "City of Angels", and "Bogus". *See id.* at ¶ 6. In December, 1999 National Public Radio released its list of the 100 most important American musical works of the century, which included Prima's 1936 song "Sing, Sing, Sing". *See* M. Dion Thompson, *NPR Compiles List of Century's Top Works of Music,* The Baltimore Sun, December 17, 1999, 1E. Today Prima's music has enjoyed renewed popularity with the resurgence of "Swing" music and dance in 1990's popular culture. *See* Pamela Kramer, *Inside Story: That Swing Thing, How Dance Form Went*

*From Historical Curiosity to Cosmic Craze,* Los Angeles Times, October 31, 1999, Los Angeles Times Magazine at 18. One music reviewer even proclaimed that "[p]erhaps the best thing about this resurgence of swing music is renewed popularity of one of pop music's best live acts, Louis Prima and Keely Smith." Richard Torres, *Louis Prima and Keely Smith "Wild Cool & Swingin,"* Newsday, August 15, 1999, D21. "Billboard Magazine" recently reported that Prima's catalog of songs "is generating 25 times more income in the last year or two than it had in past years." Irv Lichtman, *Louis Prima's Back in the Swing of Things,* Billboard, July 31, 1999, 47. This year two of Prima's Christmas songs were re-released on a CD entitled "Jingle Bell Swing". *See* Richard Harrington, *It's the Most Musical Time of the Year,* The Washington Post, December 10, 1999, N40. The reviewer of the Christmas CD found that "[t]he liveliest cuts belong to wildman Louis Prima ('What Will Santa Say When He Finds Everybody Swinging?' and 'Shake Hands With Santa Clause')." *Id.* Nineteen ninety-nine also saw the release of a CD containing Louis Prima's and Keely Smith's music entitled "Wild Cool & Swingin"', and a documentary on his life entitled "Louis Prima: The Wildest!". *See* Edvins Beitiks, *Lounge King Prima Lives on in Film Documentary,* San Francisco Examiner, October 20, 1999, B1.

Mr. Prima was a resident of New York from the late 1930's through in or about 1953–54. *See* Prima Cert. at ¶ 5. He was a resident of the State of Nevada from approximately 1954 to the time of his death in 1978. *See* Prima Cert. at ¶¶ 5–6 and 9. As a result of complications from brain surgery performed in California, Mr. Prima fell into a coma in or about 1976, after which time he lived in a clinic and then a hospital in Louisiana, where he died in 1978. *See id.* at ¶¶ 7–8. Following his death, Mr. Prima's Last Will and Testament was filed in the probate court in Las Vegas, Nevada. *See id.* at ¶ 10.

Among Louis Prima's many recordings was a song entitled "Oh Marie", which is the song at issue in this litigation. *See* Complaint at ¶ 13. Prima first popularized "Oh Marie" in 1944, and eventually the song became publicly associated with him. *See* Complaint at ¶ 13; Defendants' Rule 56.1 Statement at ¶ 15. "Oh Marie" appeared on many of Prima's albums, including "Cream of Prima", "Louis Prima In All His Moods", "Louis Prima and His Orchestra at the Terrace Room", "Breakn' It Up", "The Wildest", "Hey Boy! Hey Girl!", "The Hits of Louis & Keely", "Doin' the Twist With Louis Prima", "Angelina", "A Tribute to Louis Prima", "Just a Gigilo", "The Best of Louis Prima", "Zooma Zooma", "Jump Jive and Wail", "Louis Prima & the Witnesses", "Louis Prima Collectors' Series", and "The Golden Hits of Louis Prima". *See* Complaint at ¶ 13.

In 1953, Prima registered a copyright in an arrangement of "Oh Marie" on behalf of an entity known as "Prima Publishing Co." located in New York. *See* Hughes Aff. at Exhibit C. Neither Prima, nor Prima Publishing Co. owns a copyright in that arrangement today because the copyright was not timely renewed. *See id.* at ¶ 5. Accordingly, there is no evidence before the Court that either the plaintiff or Louis Prima owns a copyright in any work of authorship as defined in 17 U.S.C. § 101 in "Oh Marie".

Defendant Darden Restaurants is a corporation organized and incorporated under the laws of Florida, with its principal place of business in Orlando, Florida. *See* Complaint at ¶ 7; Answer at ¶ 7. In or about July, 1996, Darden Restaurants retained the services of Grey Advertising, and in 1997 commissioned Grey Advertising to create and produce a series of commercials for the Olive Garden Restaurants (the "Olive Garden"), which are family-style Italian restaurants located throughout the United States. *See* Affidavit if Vincent Infantino at ¶¶ 4–5 ("Infantino Aff.").

Grey Advertising is a corporation organized and incorporated under the laws of

Delaware with its principal place of business in New York, New York. *See* Complaint at ¶ 8; Answer at ¶ 8. "Grey is an advertising agency in the business of conceiving, developing, producing and/or distributing television commercials and/or causing television commercials to be displayed or aired." Infantino Aff. at ¶ 3. In the summer of 1997, Darden Restaurants commissioned Grey Advertising to develop a series of television commercials for the Olive Garden, the underlying theme of which was "When You're Here, You're Family." *See id.* at ¶ 5.

One of the commercials that Grey produced at the behest of Darden for the Olive Garden was entitled "Aunt Marie" (the "Commercial" or "Aunt Marie"). *See id.* at ¶ 6. The Commercial depicts a boisterous family enjoying a festive meal at the Olive Garden. *See* Defendants' Rule 56.1 Statement at ¶ 9; Infantino Aff. at Exh. A. The narrator of the commercial, who apparently is a member of the family, discusses the dinner being served at the Olive Garden, fondly recalls dinners prepared by his Aunt Marie, and remarks that his Aunt Marie enjoys dinners at the Olive Garden so much that she asked for the Olive Garden's Chicken Parmesan recipe. *See id.* The music playing in the background of the Commercial is "Oh Marie." *See id.* Grey commissioned a professional singer to sing "Oh Marie," and used its own musical arrangement. *See* Infantino Aff. at ¶¶ 10–11. For purposes of this motion only, the defendants admit that the voice singing "Oh Marie" in the background of the Commercial sounds like Louis Prima's voice, and that the song "Oh Marie" is associated with him. *See* Defendants' Rule 56.1 Statement at ¶¶ 14–15. The defendants did not request permission from the plaintiff to use "Oh Marie," or to use a voice that sounds like Prima's voice in the Commercial. *See id.* at ¶ 13; Complaint at ¶ 14.

Gia Prima and her son both saw the Commercial and recognized the voice in the Commercial as an imitation of Louis Prima's voice. *See* Prima Cert. at ¶ 11. This action followed.

The plaintiff's Complaint alleges six separate causes of action. Count I alleges that the defendants' use of a voice that "unmistakably imitates Louis Prima's voice, singing style and manner of presentation including his style of musical arrangement" violates Nevada Revised Statutes § 597.790. *See* Complaint at ¶¶ 10–20. Count II alleges a cause of action under New Jersey's common law right of publicity. *See id.* at ¶¶ 21–27. Count III alleges that the Commercial violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because the Commercial uses false representations in connection with the sale of goods in interstate commerce. *See id.* at ¶¶ 28–32. The plaintiff alleges in Count IV that the defendants interfered with the plaintiff's prospective economic advantage. *See id.* at ¶¶ 33–37. Counts V and VI allege that the defendants' use of an imitation of Louis Prima's singing voice constitutes common law unfair competition and unjust enrichment. *See id.* at ¶¶ 38–45.

## II. DISCUSSION

This Court must determine which state's law governs the substantive rights at issue. We must then determine what rights, if any, the plaintiff has in her husband's persona under the applicable law. Finally, we must determine whether the defendants are entitled to a judgment on the pleadings or summary judgment based on the arguments raised in their moving papers.

### A. APPLICABLE LEGAL STANDARDS

#### 1. *Judgement on the Pleadings Standard*

A defendant may move to dismiss a complaint or parts of a complaint before or after filing an answer. *See* Fed.R.Civ.P. 12(b)(6) and (c). A motion made before an answer is filed is a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). A motion made after an answer is filed is a motion

for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).[1] "A defense of failure to state a claim upon which relief can be granted … may be made in … [a] motion for judgment on the pleadings." *See* Fed.R.Civ.P. 12(h)(2). Here, the motion was filed after the Answer and is based on the arguments that the defendants' use of Prima's persona was *de minimus,* that the plaintiff's rights in Prima's voice are minimal, that the plaintiff does not have a right in Prima's persona under Louisiana law, and that the plaintiff's common law claims are preempted by the Copyright Act and her complaint fails to allege the requisite elements of those claims.

█ The standard under which the Court must analyze the plaintiff's complaint and the defendants' arguments in a Rule 12(c) motion for judgment on the pleadings is the same as the standard in a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See* Fed.R.Civ.P. 12(h)(2); *see also Turbe v. Government of Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991); *Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.,* 931 F.2d 1002, 1006 (3d Cir.), *cert. denied,* 502 U.S. 909, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991).

Like Rule 12(b)(6), Rule 12(c) requires the Court "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." *Turbe,* 938 F.2d at 428 (citing *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1394–95 (3d Cir.1991)); *see also Dykes v. Southeastern Pennsylvania Transp. Auth.,* 68 F.3d 1564, 1565, n. 1 (3d Cir. 1995); *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir. 1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994). A complaint may be dismissed for failure to state a claim where it appears beyond any doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the claim." *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) ( "[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").

A district court reviewing the sufficiency of a complaint has a limited role. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his [or her] claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Generally, when conducting such an inquiry, material beyond the pleadings should not be considered. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *Gannon v. Continental Ins. Co.,* 920 F.Supp. 566, 574 (D.N.J.1996). When

---

**1.** Rule 12(c) provides:

"Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."
Fed.R.Civ.P. 12(c).

a court relies upon matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(c); *Zucker v. Quasha*, 891 F.Supp. 1010, 1013 (D.N.J.1995), *aff'd*, 82 F.3d 408 (3d Cir.), *cert. denied*, 519 U.S. 825, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996). An exception to this rule is when the Court relies upon documents to which the plaintiff refers in the complaint. *See Zucker*, 891 F.Supp. at 1013 (citing *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196–97 (3d Cir.1993)). Here, the Court will invoke this exception and consider the Commercial as a "document" referred to in the complaint. More accurately, the Court will consider the videotape of the commercial attached as Exhibit A to the Infantino Affidavit.

The defendants invite the Court to take judicial notice of certain additional facts regarding Louis Prima's career and life related to the choice of law analysis. However, because there appears to be significant disputed questions of fact on some of these issues, as discussed more fully in Part II.B.1.b, *infra*, the Court will not take judicial notice of these facts, and instead will apply a summary judgment standard resolving all genuine issues of material fact in favor of the non-moving party, the plaintiff.

### 2. *Summary Judgment Standard*

A party seeking summary judgment, must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219, n. 3 (3d Cir.1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir.1986).

In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir.1987). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).

In deciding whether triable issues of fact exist, Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255–56, 106 S.Ct. 2505.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving

party has provided evidence to show that a question of material fact remains. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented ... by depositions, answers to interrogatories, or further affidavits," *id.*, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *see also Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 ("by its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion ... the requirement is that there be no genuine issue of material fact.").

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also Lujan v. National Wildlife Fed.*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("[t]he object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit"); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992) ("to raise a genuine issue of material fact ... the [nonmoving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

## B. PLAINTIFF'S RIGHTS IN LOUIS PRIMA'S PERSONA

As a threshold matter before addressing the defendants' specific grounds for judgment on the pleadings or summary judgment, the Court must determine precisely what rights the plaintiff has in Louis Prima's right of publicity, and, more specifically, whether Louis Prima's right of publicity survives his death and is property of his estate. The parties argue that the answer to this question depends upon which forum's law applies to this action.

### 1. *Choice-of-Law Analysis*

A federal court sitting in diversity must apply the choice-of-law rules of the forum state, in this case, New Jersey. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 495, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996) (citations omitted); *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir.1996) (citations omitted); *General Ceramics Inc. v. Firemen's Fund Ins. Cos.*, 66 F.3d 647, 652 (3d Cir.1995) (citations omitted). Here, the Court has jurisdiction over the plaintiff's state law claims under 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1367 (supplemental jurisdiction). The Court therefore will apply New Jersey's choice-of-law rules to determine which state's laws apply to the issues in this action.

The plaintiff's alleged right of publicity is a tort claim. *See Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 573, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). "In tort cases, New Jersey has rejected the traditional rule of *lex loci delicti*, pursuant to which the local law of the place where the wrong occurred governed the substantive issues." *Fu v. Fu*, 160 N.J. 108, 118, 733 A.2d 1133, 1138 (1999) (citing *Veazey v. Doremus*, 103 N.J. 244, 247, 510 A.2d 1187, 1189 (1986)). Instead, New Jersey applies a flexible governmental interest analysis requiring application of the law of the state with the greatest interest in resolving the particular issue. *See Gantes v. Kason Corp.*, 145 N.J. 478, 484, 679 A.2d 106, 108 (1996) (citing *Veazey*, 103 N.J. at 247–49, 510 A.2d at 1189; *Gilbert Spruance v. Pennsylvania Mfrs.*, 134 N.J. 96, 102–03, 629

A.2d 885, 887 (1993)). The Court's analysis must be done on an issue-by-issue basis. *See Gantes,* 145 N.J. at 484, 679 A.2d at 109 (citations omitted); *Reynolds v. Lancaster County Prison,* 325 N.J.Super. 298, 316, 739 A.2d 413, 423 (App.Div.1999) (citations omitted). The issue-by-issue analysis may even result in the Court applying different states' laws to different issues in the same litigation. *See Robeson Industries Corp. v. Hartford Accident & Indemnity Co.,* 178 F.3d 160, 168 (3d Cir. 1999) (citations omitted).

The parties argue for the application of the laws of three different fora. *See* Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings and/or Summary Judgment ("Defendants' Brief") at 16; Plaintiff's memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings and/or Summary Judgment ("Plaintiff's Opposition") at 16. The defendants claim that Louisiana law applies to this dispute based on Louis Prima's contacts to that state. Specifically, the defendants assert that Prima was born in Louisiana, and returned there later in his life to "live, work, and perform." *See* Defendants' Brief at 17. The plaintiff, on the other hand, argues for the application of either New Jersey or Nevada law, because the plaintiff, Gia Prima, currently lives in New Jersey, and because Louis Prima spent a substantial portion of his professional career in Nevada, the state in which Louis Prima's will was probated. *See* Plaintiff's Opposition at 17–20. The parties' respective arguments, however, lump together two distinct questions that the Court must address: First, whether the three competing states' laws recognize the right of publicity; and, second, whether that right survives the death of the person holding the right and is descendible to the decedent's estate. As discussed more fully below, there appears to be no dispute that all three jurisdictions recognize some form of a right of publicity. The more narrow question before the Court, and the question that must be analyzed to determine

which state's law applies here, is whether that right survives the death of the person holding the right.

#### a) *Existence of an Actual Conflict*

■ The first step in the governmental interest analysis is determining whether an actual conflict exists between the laws of the interested states, which is a determination to be made on an issue-by-issue basis. *See Gantes,* 145 N.J. at 484, 679 A.2d at 109 (citing *Veazey,* 103 N.J. at 248, 510 A.2d at 1189; *Capone v. Nadig,* 963 F.Supp. 409, 412 (D.N.J.1997)). If a court determines that an actual conflict exists, then a court must weigh the competing states' interests. *See Capone,* 963 F.Supp. at 412. In the absence of an actual conflict, the court applies the law of the forum state. *See Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 813 (3d Cir.1994); *RTC Mortgage Trust v. Fidelity Nat'l Title Ins. Co.,* 58 F.Supp.2d 503, 529 (D.N.J.1999) (citing *Amoroso v. Burdette Tomlin Mem'l Hosp.,* 901 F.Supp. 900, 905 (D.N.J.1995)).

■ New Jersey law recognizes a right of publicity, and provides for a cause of action based upon the infringement of that right. *See Estate of Presley v. Russen,* 513 F.Supp. 1339, 1354 (D.N.J.1981). Additionally, in New Jersey that right is characterized as a property right, and, as such, can be assigned for commercial purposes during a person's life, and can descend to the person's estate upon his death. *See McFarland v. Miller,* 14 F.3d 912, 918 (3d Cir.1994); *Estate of Presley,* 513 F.Supp. at 1355. *Cf. Piscopo v. Piscopo,* 231 N.J.Super. 576, 581, 555 A.2d 1190, 1193 (1988) (comparing "celebrity goodwill" with the right of publicity and holding that it is a marital asset subject to equitable distribution).

In Nevada, the right of publicity is embodied in a statute. *See* Nev.Rev.Stat. § 597.770, *et seq.* The Nevada statute provides, in pertinent part, "There is a right of publicity in the name, voice, signature, photograph or likeness of every per-

son." *Id.* at § 597.790(1). Except in certain limited circumstances, which basically implicate the Free Speech Clause of First Amendment of the United States Constitution, the use of another's name, voice, signature, photograph or likeness requires the person's written consent. *See id.* at § 597.790(2). Additionally, the statute provides that any unauthorized use of another's name, voice, signature, photograph or likeness for a commercial purpose, is subject to an injunction, or an action at law seeking actual, exemplary and punitive damages. *See id.* at § 597.810. Like New Jersey, the right of publicity in Nevada is transferrable and descends to the holder's estate upon his death. *See id.* at § 597.800.

Louisiana law, however, does not expressly provide for a right of publicity. Rather, courts in Louisiana have interpreted Louisiana's right of privacy to protect a person's name or likeness from commercial exploitation, *see Prudhomme v. Procter & Gamble Co.,* 800 F.Supp. 390, 396 (E.D.La. 1992), notwithstanding the majority trend holding that the rights of privacy and publicity fall under separate and distinct torts. *See Zacchini,* 433 U.S. at 573, 97 S.Ct. 2849; 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition: § 28:6 (West 1999) (discussing the distinctions between the rights of privacy and publicity). Because Louisiana couches this right in terms of the right of privacy, it appears that the right is a personal right and, as such, does not survive the death of the individual. *Cf. Reeves v. United Artists Corp.,* 765 F.2d 79, 80 (6th Cir.1985) (holding that Ohio's right of publicity is not a property right, and, therefore, like its right of privacy is not divisible). Accordingly, each of the three competing state's laws provide for some version of the right of publicity. Therefore, there is no conflict as to the existence of the right and the cause of action for infringement of that right. Rather, the conflict arises as to whether the right survives the death of the holder of the right. The conflict among the three states is clear on that issue—

New Jersey and Nevada, viewing the right of publicity as a property right, allow the right to descend to the holder's estate; and Louisiana, viewing the right in terms of a privacy tort, does not. There is no conflict between New Jersey and Nevada law, and there is a clear conflict between Louisiana on the one hand, and both New Jersey and Nevada on the other. The Court must therefore determine which state has the greatest interest in the descendability of the right of publicity.

### b) *Relevant Governmental Contacts and Interests*

■ Since there is a conflict between the law of Nevada and New Jersey on the one hand, and the law of Louisiana on the other hand as to whether Louis Prima's right of publicity is descendible, the Court must balance the interests of the various states. *See Gantes,* 145 N.J. at 486, 679 A.2d at 109; *In re Ford Motor Co.,* 174 F.R.D. 332, 348 (D.N.J.1997) (citing *Gantes,* 145 N.J. 478, 679 A.2d 106); *Pfizer, Inc. v. Employers Ins. of Wausau,* 154 N.J. 187, 192, 712 A.2d 634, 637 (1998) ("New Jersey courts seek to apply the law of the state with the greatest interest in resolving the particular issue that is raised."). A court must compare "the interests of the states whose laws are potentially involved in the underlying action and determine which state has the greatest interest in having its law applied." *In re Ford,* 174 F.R.D. at 348. "The qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply." *See D'Agostino v. Johnson & Johnson, Inc.,* 133 N.J. 516, 523, 628 A.2d 305 (1993); *General Ceramics Inc. v. Firemen's Fund Ins. Co.,* 66 F.3d 647, 656 (3d Cir.1995) (holding that the court's focus is on whether the application of the law of a given forum will advance the policies that law was intended to promote).

Both parties' briefs discuss the governmental interests of each state as those

interests relate to the existence and purpose of the right of publicity. If that were the relevant inquiry, the Court would conclude that there is no conflict among the three states, and would therefore apply New Jersey law. *See Lucker,* 23 F.3d at 813. The relevant governmental interest here, however, is the interest in permitting a person's estate to inherit their right of publicity, and on that point there is a clear conflict.

■ On that discreet issue, Louisiana's contacts to this litigation and the parties are minuscule. The parties agree that Louis Prima was born in Louisiana, and died there in 1978. *See* Defendants' Rule 56.1 Statement at ¶ 4; Plaintiff's Rule 56.1 Statement at ¶¶ 2 and 7. Gia Prima states in her certification that her husband was never a resident of Louisiana after the late 1930's when he left home to begin his musical career, and that he returned there in the late 1970's after falling into a coma. Prima Cert. at ¶¶ 4 and 8. However, the defendants, relying on hearsay statements contained in three Internet web sites of questionable reliability, claim that Prima returned to Louisiana "to live, work and perform and died there in 1978." Defendants' Brief at 17 (citing Hughes Aff. at Exhs. E, F and G). In any event, at a minimum, whether Louis Prima ever had any significant contact with Louisiana after his childhood in the 1930's is a disputed question of fact that must be resolved in favor of the non-moving party at this stage in the litigation. Additionally, the undisputed evidence before the Court demonstrates that the plaintiff, Gia Prima, was never a resident or domiciliary of Louisiana. The Court concludes that Louisiana has no qualitatively significant contact with the relevant issues in this litigation.

Moreover, even if Louisiana had any contact with the issues and parties to this action, the defendants have not identified any governmental interest that Louisiana has in prohibiting a celebrity's estate from inheriting his right of publicity, nor can the Court conceive of any interest. The only possible interest that Louisiana could have in this issue is to permit its citizens to use, for commercial purposes, the names or likenesses of celebrities after their deaths without the need to obtain a license or otherwise pay the celebrity's estate. The Court will assume for purposes of this motion that Louisiana has some interest in the free use by its citizens of dead celebrities' personas. In this case, however, neither Darden nor Grey is a citizen of Louisiana. *See* Plaintiff's Complaint at ¶¶ 7–8; Defendants' Answer at ¶¶ 7–8. Therefore, Louisiana has no interest whatsoever in Darden's and Grey's ability to use for commercial purposes Louis Prima's voice and singing style after his death, and certainly no interest in prohibiting Gia Prima or Louis Prima's estate from maintaining a cause of action for infringement of that right. The Court concludes that Louisiana has no contact with, or interest in, any issues or parties relevant to this litigation.

■ New Jersey and Nevada, on the other hand, both have significant interests in this issue and in this action. The plaintiff, Gia Prima, is a resident of the State of New Jersey and a beneficiary of the estate of Louis Prima. *See* Plaintiff's Rule 56.1 Statement at ¶ 1. New Jersey has an established interest in protecting its citizens from tortious conduct. *See Capone,* 963 F.Supp. at 413–14. Furthermore, Nevada, the state where Louis Prima lived from 1963 to 1978, *see* Prima Cert. at ¶¶ 6 and 9, and the state in which his will was probated, *see id.* at ¶ 10, has a significant interest in the corpus of estates over which its courts preside. In both New Jersey and Nevada, Louis Prima's persona and his attendant right of publicity is property of his estate. Therefore, the Court concludes based on the facts of this case, the contacts of the potentially interested fora, and the relevant governmental interests of Louisiana, New Jersey and Nevada, that Louisiana has no governmental interest in this action, while both New Jersey's and Nevada's interests are significant.

Because Louisiana has neither quantitatively nor qualitatively significant contacts with the issues in this action, nor an interest in the parties to this action, the Court cannot apply Louisiana law to the facts of this case. Louisiana drops from the analysis, and the Court is left to decide between the laws of New Jersey and Nevada. However, as discussed above, there is no conflict between the laws of New Jersey and Nevada as both states allow a decedent's estate to inherit his right of publicity. Since there is no conflict between those two states, the Court will apply the law of the forum state, New Jersey. *See Lucker*, 23 F.3d at 813; *RTC Mortgage Trust v. Fidelity Nat'l Title Ins. Co.*, 58 F.Supp.2d 503, 529 (D.N.J.1999) (citing *Amoroso v. Burdette Tomlin Mem'l Hosp.*, 901 F.Supp. 900, 905 (D.N.J.1995)).

The result the Court reaches here is consistent with the approach taken by the Restatement (Second) Conflict of Laws (American Law Institute 1971) for multistate invasion of privacy cases. The Restatement provides in pertinent part:

> The rights and liabilities that arise from matter that invades a plaintiff's right of privacy and is contained in any one edition of a book or newspaper, or any one broadcast over radio or television, exhibition of a motion picture, or similar aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence or the parties under the principles stated in § 6. *This will usually be the state where the plaintiff was domiciled at the time if the matter complained of was published in that state.*

Restatement, § 153 (emphasis supplied). Here, the states with the most significant contacts to this action are New Jersey and Nevada, and New Jersey was the plaintiff's domicile "at the time the matter complained of was published in that state." Moreover, the comments to § 153 address situations like the instant matter, where the publication occurs in multiple states and the plaintiff has contacts with states other than her domicile. The comments provide:

> Determination of the state of the applicable law is more difficult when the defendant's act or acts of communication are done in a state other than that of the plaintiff's domicile and when the matter complained of is published in the state of the plaintiff's domicile and in one or more other states to which the plaintiff has a substantial relationship. In this last situation, the local law of the state of the plaintiff's domicile will be applied unless, with respect to a particular issue, one of the other states has a more significant relationship to the occurrence and the parties.

Restatement, § 153 cmt. d. Under the Restatement formulation for invasion of the right of privacy, the Court must apply either the law of the state of the plaintiff's domicile, New Jersey, or the law of the state that has the most significant relationship with the relevant issue, New Jersey or Nevada. In either case, New Jersey law applies because there is no conflict between the laws of New Jersey and Nevada.

### 2. Scope of the Plaintiff's Rights Under New Jersey Law

■ "The right of publicity signifies the right of an individual, especially a public figure or celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from unfairly appropriating this value for commercial benefit." *McFarland v. Miller*, 14 F.3d 912, 918 (3d Cir.1994) (citations omitted); *see also Estate of Presley*, 513 F.Supp. at 1354 (citing *Edison v. Edison Polyform Mfg. Co.*, 73 N.J.Eq. 136, 67 A. 392 (1907)) (holding that an individual has a "right to prevent the unauthorized, commercial appropriation of his name or likeness."); *Jarvis v. A & M Records*, 827 F.Supp. 282, 297 (D.N.J.1993) ("The right of publicity generally applies to situations

where the plaintiff's name, reputation or accomplishments are highly publicized and the defendant used that fact to his or her advantage."). The theory underlying the right is that a celebrity has the right to capitalize on his persona, and the unauthorized use of that persona for commercial gain violates fundamental notions of fairness and deprives the celebrity of some economic value in his persona. *See McFarland,* 14 F.3d at 919 (quoting *Palmer v. Schonhorn Enters., Inc.,* 96 N.J.Super. 72, 79, 232 A.2d 458, 462 (1967)). Particularly in today's society, where celebrity status, no matter how achieved, often translates to economic wealth, *see, e.g.,* Constance L. Hays, *Monica Lewinsky Meets Jenny Craig, and a Spokeswoman is Born,* N.Y. Times, December 28, 1999, at C1, "unauthorized use harms the person both by diluting the value of the name and depriving that individual of compensation." *See McFarland,* 14 F.3d at 919; *see also Henley v. Dillard Dep't Stores,* 46 F.Supp.2d 587 (N.D.Tex.1999) (citation omitted) (holding that "celebrities have an exclusive legal right to control and profit from the commercial use of their name, personality and identity.").

■ New Jersey courts have not expressly addressed whether the right of publicity protects a singer's voice from unauthorized commercial exploitation. However, the trend among courts addressing the issue is that imitation of another's voice can give rise to a cause of action for infringing the right of publicity. *See Midler v. Ford Motor Co.,* 849 F.2d 460, 463 (9th Cir.1988); *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1098 (9th Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 355 (1993) (citing *Midler,* 849 F.2d at 463); J. Thomas McCarthy, The Rights of Publicity and Privacy § 4.14[A] (West 1998) (discussing the emergence of the voice as an identifier of a celebrity's persona). Additionally, the court in *Estate of Presley* considered the defendants' imitation of Elvis Presley's voice, among other things, and concluded that the defen-

dants' stage act violated Presley's right of publicity under New Jersey law. *See Estate of Presley,* 513 F.Supp. at 1354; *see also Jarvis,* 827 F.Supp. at 297 (holding that the Copyright Act does not preempt claims brought under New Jersey law for the appropriation of another's "voice or likeness") (citing *Midler,* 849 F.2d at 462).

"A voice is as distinctive and personal as a face." *Midler,* 849 F.2d at 463. This is particularly true for singers, whose professional public identity is uniquely associated with their voice. *See id.* (citing W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser & Keeton on Torts: § 852 (5th ed.1984)). "[W]hen voice is a sufficient indicia of a celebrity's identity, the right of publicity protects against its imitation for commercial purposes without the celebrity's consent." *Waits,* 978 F.2d at 1098 (citing *Midler,* 849 F.2d at 463). "An advertiser who imitates without permission the sound or voice of a celebrity in a radio advertisement or on the sound track of a television ad uses another's persona as much as if a picture were used." J. Thomas McCarthy, The Rights of Publicity and Privacy § 4.14[A] (West 1998). The Court is persuaded by those cases holding that imitating a celebrity's voice can give rise to a cause of action for violation of the right of publicity, and concludes that the New Jersey courts would adopt such a rule.

■ To allege a prima facie case for infringement of the right of publicity, the plaintiff must show both validity and infringement. *See* McCarthy, The Rights of Publicity and Privacy § 3.1[B]. That is to say that the plaintiff must be able to prove that she "owns an enforceable right in the identity or persona of [Louis Prima]," and that the defendants "without permission, ... used some aspect of identity or persona in such a way that [Louis Prima] is identifiable from defendant[s'] use," and that the "defendant[s'] use is likely to cause damage to the commercial value of that persona." *Id.*

■ Here, the plaintiff alleges that she owns an enforceable right in Prima's identity and persona. *See* Complaint at ¶¶ 13, 23 and 25. The defendants admit for purposes of this motion that the voice singing "Oh Marie" on the Commercial sounds like Louis Prima and that the song "Oh Marie" has become associated with him. *See* Defendants' Rule 56.1 Statement at ¶¶ 14–15. The plaintiff further alleges that the defendants did not seek permission to use Prima's voice, and that the defendants' use has caused damage. *See* Complaint at ¶¶ 14, 25 and 26. Accordingly, applying New Jersey law to this action, there is no dispute at this point in the litigation that the defendants imitated Prima's voice on the Commercial, that the defendants used the sound-alike voice for commercial purposes, and that the defendants did not have the plaintiff's consent or permission. The plaintiff, therefore, has made out a prima facie case for infringement of the plaintiff's right of publicity.

## C. DEFENDANTS' ARGUMENTS IN SUPPORT OF MOTION

Notwithstanding the defendants' admissions for purposes of this motion regarding the use of a sound-alike Louis Prima in the Commercial, the defendants argue that they are entitled to judgment on the pleadings, or summary judgment for four reasons. First, the defendants claim that their use of Prima's voice in the Commercial is not actionable because it is *de minimis*. *See* Defendants' Brief at 6–11. Second, the defendants argue that "the limited nature of plaintiff's alleged rights is fatal to her claims." *See id.* at 11–16. Third, the defendants claim that under Louisiana law, the plaintiff does not have a right of publicity. *See id.* at 16–20. Finally, the defendants argue that the "plaintiff's common law claims fail for the same reasons." *See id.* at 20–24.

### 1. *The Defendants' Use of Prima's Voice Was Not De Minimis*

■ The defendants argue that their use of Prima's voice in the Commercial was so insignificant that the plaintiff cannot maintain a cause of action under a *de minimis* theory as applied in copyright and trademark contexts. The Court will assume for purposes of this motion that the *de minimis* concept in copyright and trademark law applies generally to the plaintiff's common law right of publicity asserted here. Even with that assumption, the defendants' argument is without merit.

For their copyright analogy, the defendants rely primarily on two cases from the United States Court of Appeals for the Second Circuit, *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70 (2d Cir.1997), and *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215 (2d Cir.1998).

In *Ringgold*, the plaintiff was the copyright holder of a visual work of art entitled "Church Picnic Story Quilt", which depicted an African–American Sunday School picnic at the Freedom Baptist Church in turn-of-the-century Atlanta, Georgia. *See Ringgold*, 126 F.3d at 71. The defendants aired a situation comedy television program about a 1990's middle class African–American family entitled "ROC". *See id.* at 72. A poster made from the plaintiff's art work was displayed on a wall in several scenes of an episode of ROC, which centered around a music recital at a 1990's African–American church. *See id.* at 72–73. The district court granted the defendants' motion for summary judgment based on the defendants' fair use defense. The Court of Appeals reversed.

The Second Circuit held that the concept of *de minimis* use of a copyrighted work has two possible applications.[2] "First, *de*

2. The *Ringgold* court discusses three possible applications of the *de minimis* concept in copyright law, but concludes that "the concept is an inappropriate one to be enlisted in

fair use analysis." *See Ringgold*, 126 F.3d at 75–76. The defendants' brief at page seven quotes the beginning of the court's fair use analysis, but omits the court's conclusion re-

*minimis* in the copyright context can mean what it means in most legal contexts: a technical violation of a right so trivial that the law will not impose legal consequences." *Id.* at 74. "Second, *de minimis* can mean that copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying." *Id.* (citing Mellville B. Nimmer and David Nimmer, Nimmer on Copyright, § 130.3[A], at 13–27). The second application has no applicability here because, unlike in a copyright action, the plaintiff here need not prove that the defendant "copied" a work of Louis Prima to succeed on her claims. Accordingly, the Court only will consider the *Ringgold* court's *de minimis* analysis under which a trivial or technical violation of the law will not give rise to a cause of action.[3]

Here, the use of Prima's voice in the Commercial cannot be considered *de minimis* under any meaning of the term. First, the song "Oh Marie" plays almost continuously throughout the entire Commercial, whereas in many of the cases defendants cite the copyrighted material appears briefly in the context of a larger work. *See, e.g., Ringgold,* 126 F.3d at 73 (poster appearing for 26.75 seconds of a situation comedy episode); *Sandoval,* 147 F.3d at 216 (copyrighted photographs visible for 35.6 seconds in the background of a full-length feature); *Higgins v. Detroit Educ. Television Found.,* 4 F.Supp.2d 701, 707 (E.D.Mich.1998) (copyrighted song audible for twenty seconds of a five-minute scene). Second, the song and more importantly the voice of the Prima imitator are clearly audible above the din of restaurant noise and the voice of the narrator, and the

refrain "Oh Marie" is sung at key moments in the Commercial when Aunt Marie's face appears and when the narrator fondly recalls Aunt Marie's cooking. Third, the Court rejects the defendants' unsupported assertion that "the Song was selected for its thematic relevance and typicality as background music in an Italian restaurant." *See* Defendants' Brief at 8. The defendants appear to be claiming, without citation to any affidavits, that they selected "Oh Marie" as the music for "Aunt Marie" merely because it was typical of background music played in Italian restaurants. The *Ringgold* opinion, relied upon so heavily by the defendants, rejected this very argument. There, the court stated that "it seems disingenuous for the defendant, ... whose production staff evidently thought that the poster was well suited as a set decoration for an African-American church scene of a ROC episode, now to contend that no visually significant aspect of the poster is discernible." *Ringgold,* 126 F.3d at 77. Similarly, here, the Court finds disingenuous the argument that the defendants, whose creative staff chose the song "Oh Marie" for the "Aunt Marie" commercial, to now claim that no audibly significant aspect of the song "Oh Marie" is discernable.

The Court concludes that the defendants' use of Louis Prima's voice in the Commercial was not *de minimis.*

**2. The Plaintiff Has Rights in Louis Prima's Voice That Are Not Preempted by the Copyright Act**

The defendants next argue that "the limited nature of plaintiff's alleged rights is fatal to her claims." *See* Defen-

jecting the *de minimis* concept in the fair use context.

**3.** In *Sandoval v. New Line Cinema Corp.,* 147 F.3d 215, 217 (2d Cir.1998), the court applied the second aspect of the *de minimis* concept discussed in *Ringgold,* under which the court must determine whether the allegedly infringing work was "substantially similar" to the copyrighted work, and, thus, whether there

was an actionable copying. *See id.* As discussed above, the plaintiff here need not prove substantial similarity or copying by the defendant to succeed on her right of publicity claim. Therefore, the Second Circuit's analysis of the *de minimis* concept in *Sandoval* has no applicability here because the plaintiff's claims are not based on copyright infringement.

dants' Brief at 11–16. The defendants claim that "imitation of sound in a work subject to copyright protection cannot be the predicate for a right of publicity claim, and, without more, *i.e.*, some affirmative act of palming off, does not constitute unfair competition." *Id.* at 12–13.

The defendants' quasi preemption argument is without merit. First, the plaintiff is not asserting rights in the song "Oh Marie." Rather, the plaintiff claims that the defendants violated Prima's right of publicity when they hired a professional singer to imitate Prima's voice in the Commercial. *See* Complaint at ¶¶ 15, 23, 29, 35, 39 and 44. Second, while the issue has not been addressed by the Third Circuit, the Court is persuaded by the reasoning of those cases holding that the Copyright Act does not preempt a common law right of publicity for unauthorized use of another's voice.

Section 301 of the Copyright Act preempts state laws that fall within the subject matter of the federal copyright law and create rights that are equivalent to the exclusive rights granted to a copyright holder. *See Jarvis,* 827 F.Supp. at 296–97 (quoting *SBK Catalogue Partnership v. Orion Pictures Corp.,* 723 F.Supp. 1053, 1066 (D.N.J.1989)) (citing *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973, 976 (9th Cir.1987)).[4]

Professor Nimmer describes § 301 preemption as follows:

[I]f under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will in itself infringe the state-created right, then such right is preempted. But if qualitatively [different] other elements are required, instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption.

Nimmer, § 1.01[B][1], at 1–13.

The claim the plaintiff asserts here "is for infringement of voice, not for infringement of a copyrightable subject such as sound recording or musical composition." *Waits,* 978 F.2d at 1100; *see also Midler,* 849 F.2d at 462 ("What is put forward as protectable here is more personal that any work of authorship."); *Jarvis,* 827 F.Supp. at 297 ("The Copyright Act does not preempt claims based on the appropriation of unfixed, non-copyrightable items such as a plaintiff's voice or likeness.") (citing *Midler,* 849 F.2d at 462).

Moreover, the elements of the plaintiff's right of publicity claim are qualitatively different from a claim brought under the Copyright Act. To succeed in a copyright action "two elements must be proven: (1) ownership in a valid copyright, and (2) copying of constituent elements of the work that are original." *First Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 548, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). "Plaintiff's ownership, in turn, breaks

---

4. Section 301 provides, in pertinent part:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such work under the common law or statutes of any State.

(b) Nothing in this title annuls or limits any rights, remedies under the common law or statutes of any State with respect to—
(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or . . .
(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301.

down into the following constituent parts: (1) originality in the author; (2) copyrightability of the subject matter; (3) citizenship status of the authors . . .; (4) compliance with applicable statutory formalities; and (5) (if the plaintiff is not the author) a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant." Nimmer, § 13.01[A]. Here, as discussed more fully above, the plaintiff must prove that she has an enforceable right in Prima's persona, and that the defendants used Prima's persona for a commercial purposes and in a manner likely to cause damage. The elements of each cause of action are completely different, and, thus, there cannot be § 301 copyright preemption of the plaintiff's common law right of publicity.

The defendants also rely on a recent decision of the United States District Court for the Southern District of New York, *Oliveira v. Frito–Lay, Inc.*, 96–9289, 1999 WL 20849 (S.D.N.Y. Jan.15, 1999), for the proposition that the plaintiff's exclusive remedy for the unauthorized performance of a "signature song" lies in the law of copyright. In *Oliveira*, the plaintiff brought suit against Frito–Lay for its use of the song "The Girl from Ipanema" in a commercial. 1999 WL 20849 at *1. The plaintiff alleged that although she never had a copyright in the song, the song had attained a secondary meaning "as plaintiff's unregistered trademark 'signature' song." *Id.* Although factually similar to this case, the legal claims in *Oliveira* were different from the legal claims plaintiff asserts here, and, therefore, that decision is irrelevant to the issues presently before the Court. In that case, and specifically the portions of the opinion relied upon by the defendants, the court dismissed the plaintiff's claims for trademark dilution brought under the Lanham Act, 15 U.S.C. § 1125(c), as well as her New York state-law claims brought under § 51 of the New York Civil Rights Law and her common law claim for unjust enrichment. The plaintiff's Lanham Act claim in this case,

on the other hand, is for violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), false representations in advertising. *See* Complaint at ¶¶ 28–32. The opinion cited by the defendants does not address § 43(a) of the Lanham Act, and, in fact, an earlier opinion by the same judge in that case denied the defendants' motion dismiss that plaintiff's § 43(a) claim for false advertising. *See Oliveira v. Frito–Lay, Inc.*, 96–9289, 1997 WL 324042, *9 (S.D.N.Y. June 13, 1997). The only claim to survive the defendants' two motions to dismiss in *Oliveira* was the § 43(a) Lanham Act false advertising claim. Moreover, the court dismissed the plaintiff's New York Civil Rights Law § 51 claim based on a statutory exception in that law that permits the use of another's voice when the person has "disposed of" the voice embodied in the production. *See Oliveira v. Frito–Lay*, 1999 WL 20849 at *5 (S.D.N.Y.1999) (citing N.Y. Civ. Rights Law § 51 (McKinney 1998)). The plaintiff in this case has not asserted a claim under the New York Civil Rights Law § 51, and, therefore, the statutory exception does not apply here. Finally, the *Oliveira* court disposed of the plaintiff's New York unjust enrichment claim because, among other things, under New York law the "plaintiff's exclusive remedy is under sections 50 and 51 of the N.Y. Civil Rights Act." *Id.* at *6 (citations omitted). Again, the *Oliveira* court's analysis of New York law on that issue has no application to the issues presently before the Court. The defendants' reliance on *Oliveira* is misplaced.

The Court concludes that the plaintiff has rights under New Jersey law in the voice of Louis Prima, and that the claims plaintiff asserts are not preempted by the Copyright Act. The defendants' arguments to the contrary are without merit.

3. *The Plaintiff Has a Right of Publicity under New Jersey Law*

The defendants next argue for the application of Louisiana law under which Louis

Prima's right of publicity would not descend to his heirs. *See* Defendants' Brief at 16–20. For the reasons discussed in Part II.B.1, *supra*, the defendants' argument is without merit.

### 4. *The Defendants Have Not Met Their Burden with Respect to the Plaintiff's Common Law Claims*

The defendants further argue that the Court must dismiss the plaintiff's common law claims "for one or some of the following reasons." *See* Defendants' Brief at 20. First, the defendants argue that under Nevada law the plaintiff's exclusive remedy is found in the right of publicity statute. *See id.* at 21. Second, the defendants claim that Section 301 of the Copyright Act preempts the plaintiff's claims to the extent that the plaintiff seeks protection for Prima's "style of musical arrangement." *See id.* Third, the defendants argue that "plaintiff has failed to allege the minimum prerequisites for claims of common law unfair competition, tortious interference with prospective economic advantage, and unjust enrichment." Finally, the defendants state that "for the reasons stated above, each of these claims fails as a matter of law because of the absence of any tortious conduct by defendants." *See id.*

The defendants argument that the Nevada publicity statute provides the plaintiff with her exclusive remedy is unavailing because, as discussed in Part II.B.1.b, *supra*, New Jersey law, not Nevada law, provides the rule of decision in this case.

The defendants argue in the alternative that if New Jersey law applies "plaintiff's common law claims, to the extent premised on an alleged taking of Prima's 'style of musical arrangement,' are preempted by the federal Copyright Act." Defendants' Brief at 22. The plaintiff's common law claims asserted here, however, do not assert an interest in material subject to protection under the Copyright Act. For the reasons discussed in Part II.C.2, *supra*, the Court concludes that the plaintiff's common law claims based on the defendants' use of a Louis Prima's voice in the Commercial are not preempted by the Copyright Act.

The defendants also argue that the plaintiff has not plead the requisite elements to support a claim for tortious interference with a prospective economic advantage. The leading case in New Jersey on tortious interference with prospective economic advantage is *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 563 A.2d 31, 37 (1989). In *Printing Mart*, the New Jersey Supreme Court set forth the elements of a claim for tortious interference with prospective economic advantage as follows: (1) plaintiff must have had a reasonable expectation of economic advantage; (2) defendant must have interfered intentionally and with malice; (3) defendant's interference must have caused the loss of plaintiff's prospective gain; and (4) the injury must have caused damage. *Printing Mart–Morristown*, 116 N.J. at 751, 563 A.2d at 37. The defendants argue that the complaint does not allege "a single instance of [the plaintiff] marketing Prima's voice, 'singing style,' or 'manner of presentation,' .... Defendants' Brief at 23. The Federal Rules of Civil Procedure, however, do not require specific factual allegations, but, rather, require simple notice pleading and "a short plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Plaintiff's complaint alleges that she has "actively utilized her right to commercially market proprietary interest in Louis Prima's voice, singing style and manner of presentation including his style of musical arrangement." Complaint at ¶ 34. The defendants further argue that the plaintiff's damages claim is "illogical." *See* Defendants' Brief at 23. The Court cannot determine what the defendants mean by their allegation that the plaintiff's damage claim is "illogical." In any event, the Court concludes that the plaintiff has sufficiently plead the elements of tortious

interference with prospective economic advantage under New Jersey law.

The defendants further argue that the plaintiff's claim for unfair competition fails "because of the barely discernible audio level, there is and can be no likelihood of confusion, and similarly, because of the fair use doctrine, the alleged imitation is privileged." Defendants' Brief at 23. The defendants' argument is without merit for two reasons. First, as discussed in Part II.C.1, *supra*, the Court concludes that the song "Oh Marie" is clearly audible in the Commercial. At a minimum, this is a disputed question of fact that must be resolved in favor of the non-moving party. Additionally, for the reasons discussed in Part II.C.1, *supra*, the Court rejects the defendants' fair use argument to the extent that it is premised on the defendants' alleged *de minimis* use. To the extent that the defendants' fair use claim is premised on some other unstated theory, the defendants' argument is without merit.

 Finally, the defendants argue that the "plaintiff's common law claim of unjust enrichment [does not] survive scrutiny." Defendants' Brief at 23. The defendants argue that the "tort of unjust enrichment lies in contractual or quasi-contractual liability," and that the plaintiff must demonstrate a contractual relationship with the defendants. *Id.* "In New Jersey, the tort of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Eli Lilly and Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 496 (D.N.J.1998) (citing *Callano v. Oakwood Park Homes Corp.*, 91 N.J.Super. 105, 108, 219 A.2d 332 (App. Div.1966)). "To assert a claim of unjust enrichment a plaintiff must show that 'it expected renumeration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of renumeration enriched defendant beyond its contractual rights.'" *Id.* (quoting *VRG Corp. v. GKN Realty*, 135 N.J. 539, 554, 641 A.2d 519 (1994)). The plaintiff has not alleged that she performed or otherwise conferred a benefit on the defendants under a contractual or quasi-contractual relationship with the expectation of renumeration.

Therefore, the plaintiff has not stated a claim upon which relief can be granted for unjust enrichment under New Jersey law, and the defendants' motion for a judgment on the pleadings is granted. Count VI of the plaintiff's complaint is dismissed. In all other respects, the defendants' motion for judgment on the pleadings or for summary judgment is denied.

## III. CONCLUSION

For the reasons discussed above, the defendants' motion for judgment on the pleadings or for summary judgment is granted in part and denied in part.

## ORDER

This matter having come before the Court upon the motion of defendants Darden Restaurants, Inc., doing business as the Olive Garden Restaurant, and Grey Advertising, Inc.; and for the reasons stated in the Opinion accompanying this Order;

IT IS this 12th day of January, 2000 hereby;

ORDERED that the defendants' motion is GRANTED IN PART AND DENIED IN PART.